**UNITED STATES of America,**

v.

**Wilbert S. BRODIE, et al., Defendants.**

**No. CRIM. 02–0190ESH.**

United States District Court,
District of Columbia.

July 19, 2004.

Steven Carl Tabackman, Tighe Patton Armstrong Teasdale PLLC, Washington, DC, for Defendant.

Jonathan Niles Rosen, Thomas Edwin Zeno, U.S. Attorney's Office, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Defendants face criminal charges arising from their alleged participation in schemes to defraud various financial institutions by submitting fraudulent documents in order to receive inflated mortgage proceeds.

According to the indictment, while there are differences between the two conspiracies charged, the basic *modus operandi* is the same. In the case of all properties, the property was flipped, *i.e.*, purchased and resold on the same day. In particular, a dilapidated property was initially bought by a buyer who did no repairs to the property, but then resold it at an inflated price. The buyer financed the purchase with a mortgage loan that was obtained with false documentation regarding the value of the property. The defendants and their co-conspirators generated profits for themselves based on the substantial differential between the purchase price and the inflated sale price.

As a result of these alleged activities, all defendants have been charged in a multi-count indictment that was returned on November 13, 2003.[1] That indictment charges that all defendants conspired to make false statements to financial institutions by submitting fraudulent documentation in order to obtain bogus mortgage loans in violation of 18 U.S.C. § 371 (Count 1). With respect to this alleged scheme, defendant Brodie also faces three counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts II–IV). Finally, defendants Padonu and Kareem have been charged in a second § 371 conspiracy, also involving the submission of false statements to financial institutions regarding mortgage loans (Count V). Trial is currently set for September 10, 2004.

Presently before the Court are a variety of motions filed on behalf of each of the defendants.[2] An evidentiary hearing is set

---

1. Originally, only defendant Brodie was charged in a four-count indictment that was unsealed on April 8, 2003. This was super-seded by the November 13, 2003 indictment which is at issue here. This indictment added defendants Padonu and Kareem and a second conspiracy count (Count V) charging Padonu and Kareem but not Brodie.

2. Defendants have also been permitted to join in the motions of their co-defendants, and therefore, unless otherwise indicated, the

for August 19 relating to the motions to suppress physical evidence and statements. The Court, however, will now address the remaining non-evidentiary motions.[3] These include motions to sever based on misjoinder, Fed.R.Crim.P. 14 and *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968);[4] to dismiss Count I and to dismiss the indictment based on speedy trial and multiplicity arguments. Defendants also request a bill of particulars and a pretrial hearing to determine the admissibility of co-conspirator statements and move to strike aliases and to suppress statements obtained in violation of the Vienna Convention on Consular Relations. For the reasons given below, the Court denies these motions in part and grants them in part.

## I. Speedy Trial

All defendants seek dismissal of the indictment for violation of their right to a speedy trial. Defendants invoke the Fifth and Sixth Amendments to argue that the preindictment delay in returning an indictment against them violated their rights to a speedy trial. Defendant Brodie also argues that his speedy trial rights under the Sixth Amendment have been violated due to the delay in bringing him to trial.[5]

These arguments will be considered *seriatim.*

### A. Preindictment Delay

■ Any argument regarding preindictment delay must be based on the due process clause, and to establish such a due process violation, a defendant must establish that the delay resulted in "actual prejudice to the conduct of the defense" and that the government "intentionally delayed to gain some tactical advantage" over the defendant. *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).[6] *See also United States v. Foxman,* 87 F.3d 1220, 1224 (11th Cir.1996) (ten-year delay did not violate defendant's due process rights in absence of showing of intentional action to gain tactical advantage).

■ Defendants cannot satisfy their burden under this standard. While it is true that the relevant events occurred in 1995 through July 1997, and the first indictment against defendant Brodie was unsealed on April 8, 2003,[7] and the superseding indictment against all three defendants was returned on November 13, 2003, defendants have offered nothing to support a

Court has proceeded as if all the non-evidentiary motions apply to all defendants.

**3.** The Court will address the government's 404(b) motion on August 19.

**4.** Only defendants Brodie and Kareem made statements that the government seeks to introduce at trial. *See* Section VIII(C), *infra.*

**5.** Defendant Brodie filed his speedy trial motion prior to the return of the superseding indictment, but his motion survives the new indictment and will be addressed herein.

**6.** As the Court held in *Marion,* defendant has no Sixth Amendment claim based on allegedly prejudicial pre-indictment delay. 404 U.S. at 320, 92 S.Ct. 455 ("[E]ither a formal indictment or information or else the actual re-

straints imposed by arrest and holding to answer a criminal charge" are necessary to trigger the protections of the Sixth Amendment).

**7.** While the D.C. Circuit has not addressed this issue, the majority of circuits have held that courts should not consider the time period when the indictment was sealed. *See, e.g., United States v. Lewis,* 907 F.2d 773, 775 n. 3 (8th Cir.1990); *United States v. Muse,* 633 F.2d 1041, 1043–44 (2d Cir.1980); *United States v. Hay,* 527 F.2d 990, 994 n. 4 (10th Cir.1975). *Contra United States v. Bergfeld,* 280 F.3d 486, 489 (5th Cir.2002); *United States v. Hayes,* 40 F.3d 362, 365 (11th Cir.1994).

claim that the government intentionally delayed in order to gain a tactical advantage or to harass. Nor does any defendant make a claim of actual prejudice. Rather, there is an unspecified reference to failing memories, but the law is clear that bare allegations that delay has dimmed the memories of witnesses and defendants does not constitute actual prejudice. *See, e.g., Saiz v. Eyman,* 446 F.2d 884, 885 (9th Cir.1971) (*per curiam*); *United States v. Marler,* 756 F.2d 206, 214 (1st Cir.1985). Defendants have therefore failed to show that their due process rights were violated by any preindictment delay.

### B. Post–Indictment Delay.

■ Defendant Brodie also argues that his Sixth Amendment rights to a speedy trial have been violated due to the delay since the filing of the first indictment against him on April 23, 2002. While no definitive time period has been set for compliance with the constitutional stricture on trial delays, the Supreme Court established a four-factor test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a defendant's constitutional right to a speedy trial is violated. The factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Id.* at 530–32, 92 S.Ct. 2182.

■ With respect to the length of the delay, whether one uses the date of the first indictment (April 23, 2002) or the date of its unsealing (April 8, 2003) (*see* note 7, *supra*), the Court finds that the length of delay is sufficiently long to raise the presumption of prejudice, and therefore, to trigger consideration of the remaining factors.[8] Despite this passage of time, an examination of the *Barker* factors demonstrates that this delay did not violate defendant's constitutional rights.

■ Importantly, the delay here cannot be attributed to any fault or misconduct by the government. Since the unsealing of the first indictment, Mr. Brodie has twice requested a change in counsel and has thus had three different lawyers; the government returned a superseding indictment on November 13, 2003, that increased the number of counts and defendants; extensive document discovery has been produced to the defendants; and numerous motions have been filed by all parties. As is obvious, this case is not straightforward, but involves "a serious, complex conspiracy charge" involving multiple players and numerous properties that span several years. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. *See also United States v. Register,* 182 F.3d 820, 827 (11th Cir. 1999); *United States v. Dreitzler,* 577 F.2d 539, 549–50 (9th Cir.1978). Moreover, even if the period when the indictment was sealed were to be considered, there is *no* suggestion that the government acted with bad faith or had a dilatory motive, and the record does not reveal any "official negligence" by the government. *Doggett v. United States,* 505 U.S. 647, 656–57, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Nor do the third and fourth factors support a ruling in defendant's favor. Other than filing a speedy trial motion with respect to the original indictment, defendant Brodie has done nothing to enforce his right to a speedy trial. Defendant has also failed to put forth any basis to support an argument that the delay in his trial has caused any actual prejudice. As previously noted, defendant's speculative claim regarding dimming memories is insufficient. *See United States v. Tannehill,* 49 F.3d 1049, 1054 (5th Cir.1995); *United States v.*

---

8. Trial is set to begin on September 10, 2004.

*Maling,* 737 F.Supp. 684, 699–700 (D.Mass.1990). Second, during the one-year period that the indictment was sealed, defendant Brodie suffered "neither pretrial detention, nor personal anxiety and public obloquy, often the most obnoxious concomitants of an indictment," *United States v. Alo,* 439 F.2d 751, 755 (2d Cir. 1971), and since defendant's arrest on April 23, 2003, he has remained at liberty throughout these proceedings. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182 (Sixth Amendment's speedy trial provision is intended, in part, to prevent undue "oppressive pretrial incarceration").

Because the *Barker* factors weigh against defendant's claim, this Court concludes that defendant's Sixth Amendment speedy trial rights have not been violated.

## II. Multiplicity

■ Defendants move either to dismiss the indictment or to require the government to elect whether it will proceed with the Count I or the Count V conspiracy. To support this request for relief, defendants claim that the indictment is multiplicitous. An indictment is multiplicitous, and thereby defective, "if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Harris,* 959 F.2d 246, 250 (D.C.Cir.1992). That is not the case here. Counts I and V charge two different conspiracies involving different properties. As discussed more fully herein (*see* Section VIII, *infra*), proof of each conspiracy is distinguishable and independent and there is no prohibition against charging two logically connected conspiracies in one indictment. It is therefore clear that it is not multiplicitous to charge two § 371 conspiracies in one indictment. *See, e.g., United States v. Pallais,* 921 F.2d 684, 687 (7th Cir.1990) (marijuana and cocaine conspiracies were not multiplicitous because some defendants were involved with one conspiracy but not the other, and the conspiracies involved different "sources, channels of distribution, methods of shipment and processing, and customers").

## III. Pretrial Determination of Admissibility of Co–Conspirator Statements

Defendants have moved for a pretrial hearing on the admissibility of co-conspirator statements. The admission of co-conspirator statements is governed by Fed. R.Evid. 801(d)(2)(E), which requires proof of the following: (1) a conspiracy, (2) between the declarant and the co-defendant, and (3) statements made in furtherance of the conspiracy. Here, the government persuasively argues that no pretrial hearing is necessary, but instead that the Court should admit the statements during trial subject to the contingent relevant rule of Fed.R.Evid. 104(b).

It is accepted in this jurisdiction that district courts have discretion to admit co-conspirator statements conditionally "subject to connection," at the close of the government's case, to the three requirements of 801(d)(2)(E) (co-conspirators making statements in furtherance of the conspiracy). *See United States v. Jackson,* 627 F.2d 1198, 1218–19 (D.C.Cir.1980) (holding that a district court has "no obligation" to conduct a "mini-trial" before trial to determine the existence of the conspiracy and noting that a district court is "vested with considerable discretion to admit particular items of evidence 'subject to connection'"); *United States v. Gantt,* 617 F.2d 831, 845 (D.C.Cir.1980) ("As a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit decla-

rations of co-conspirators 'subject to connection' ").[9]

■ Here, given that the indictment includes two conspiracies, alleging over 150 overt acts in furtherance of the conspiracies, and involving a large number of witnesses, the Court finds that such a preliminary hearing would be immensely time-consuming and would unnecessarily delay the trial. Therefore, in accordance with the governing practice in this jurisdiction, the Court denies defendants' motion and will allow the admission of co-conspirator statements at trial subject to proof of connection. Of course, if the requisite connection is not demonstrated at trial, the Court will strike the testimony and provide a cautionary instruction to the jury.

## IV. Aliases.

■ Defendant Kareem moves to strike all aliases from the indictment, arguing that these references are prejudicial. The government responds that defendant's aliases will be used to identify him at trial. The general rule regarding the use of aliases is that "[i]f the government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted." *United States v. Clark*, 541 F.2d 1016, 1018 (4th

Cir.1976); *see also United States v. Palmer*, No. 89cr0036, 1989 U.S. Dist. Lexis 6498, *33–34 (D.D.C. June 8, 1989). Because the government credibly asserts that these aliases are necessary to identify defendant at trial, this motion must be denied.[10] If, however, the government fails to offer proof at trial that the aliases listed in the indictment tend to identify defendant and connect him with the acts he is charged with, defendant may renew this motion at that time. *See Clark*, 541 F.2d at 1018. Moreover, based on the representations of the government regarding its intended use of aliases at trial, there is no basis for rejecting this evidence under Fed.R.Evid. 403, since there is no possibility of confusion or unfair prejudice.

## V. Vienna Convention on Consular Relations

■ Defendant Kareem, relying on *United States v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir.1999), argues that his statements should be suppressed because he was not informed of his right to notification of his consulate pursuant to Art. 36 of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.[11] This reliance is misplaced since that case was reversed, and in an *en banc* opinion, the Ninth Circuit ruled that a violation of the Vienna Convention's requirement does not require suppression. *United States v. Lombera–Camorlinga*,

---

9. The approach has been used in recent cases in this jurisdiction. *See United States v. Edelin*, 128 F.Supp.2d 23, 45–46 (D.D.C.2001) (finding it unnecessary to conduct an advance determination of conspiracy, which would amount to a time-consuming "mini-trial prior to trial in this case" and would place an unreasonable burden on the government); *United States v. Cooper*, 91 F.Supp.2d 60, 78 (D.D.C.2000) (noting in a RICO conspiracy case that it is common practice in the D.C. Circuit to admit declarations of co-conspirators subject to connection).

10. For instance, the paperwork regarding one piece of property at issue in Count V identifies the loan officer as Tayo Kareem and Ade Kareem.

11. While the Court is unaware if co-defendants Brodie and Padonu are foreign nationals, it will assume for purposes of this opinion that they too have the right to raise this issue.

206 F.3d 882, 885–86 (9th Cir.2000). That holding is also consistent with every other opinion that has addressed the issue. *United States v. Ortiz*, 315 F.3d 873, 886 (8th Cir.2002) (holding that statements should not be "excluded merely because the Convention has been violated," but that there must be a "causal connection between the violation and [their giving of] their statements"); *United States v. Lawal*, 231 F.3d 1045, 1048 (7th Cir.2000) (holding that the exclusionary rule is not the proper remedy for a violation of a detainee's rights under the Convention); *United States v. Chanthadara*, 230 F.3d 1237, 1255 (10th Cir.2000) (holding that suppression is not an appropriate remedy for a violation of the Convention); *United States v. Cordoba–Mosquera*, 212 F.3d 1194, 1195–96 (11th Cir.2000) (same); *United States v. Li*, 206 F.3d 56, 60, 62 (1st Cir.2000) (same). Therefore, defendant's motion to suppress statements on the grounds that his rights under Art. 36 were violated is denied.

## VI. Dismissal of Count I

Defendant Brodie moves to dismiss Count I on the grounds that the mortgage accounts are not insured by the Federal Deposit Insurance Corporation ("FDIC"), and therefore, they may not be used to support an indictment based on alleged violations of 18 U.S.C. § 1014. The Court is not in a position to address this motion at this time since the government has yet to present its evidence. The motion will therefore be denied without prejudice to being renewed in the event that the government fails to adduce sufficient evidence to prove that deposits at the financial institutions at issue were in fact insured by the FDIC.

## VII. Bill of Particulars

Defendant Padonu has filed a Motion for a Bill of Particulars requesting exactly the same information that defendant Brodie previously requested prior to the return of the superseding indictment. The Court ruled on that motion from the bench on August 14, 2003, and it incorporates by reference its ruling therein. In particular, the Court orders the government to disclose the names of the other alleged co-conspirators referred to in Counts I and V. *See United States v. Ramirez*, 54 F.Supp.2d 25, 30 (D.D.C.1999); *United States v. Trie*, 21 F.Supp.2d 7, 22 (D.D.C. 1998); *United States v. Hsia*, 24 F.Supp.2d 14, 30–31 (D.D.C.1998).

■ With respect to defendant's additional requests, the Court will deny these requests on the grounds that a bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence. *See Ramirez*, 54 F.Supp.2d at 29; *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990). Nor is the government required to prove how or when the conspiracy was formed, the details of any meeting or when the defendant joined the conspiracy. *See, e.g., United States v. Long*, 449 F.2d 288, 294 (8th Cir.1971); *United States v. Hubbard*, 474 F.Supp. 64, 80–81 (D.D.C.1979); *United States v. Pacheco*, 902 F.Supp. 469, 474 (S.D.N.Y.1995).

■ Further, it bears noting that "[i]t is not the function of a bill of particulars to provide detailed disclosure of the government's evidence in advance of trial." *Overton v. United States*, 403 F.2d 444, 446 (5th Cir.1968). Nor is the purpose of a bill of particulars to provide for "whole sale discovery of the Government's evidence." *Edelin*, 118 F.Supp.2d at 36 (internal citation and quotation marks omitted). When the indictment is sufficiently detailed, or the requested information is available in some other form, a bill of particulars is not required. *See United*

*States v. Butler,* 822 F.2d 1191, 1193 (D.C.Cir.1987).

As is clear from a review of the indictment, the charges against the defendants are detailed and alleged with particularity. Further, the discovery provided by the government has been voluminous, including file cabinets of loan files, IRS documents, bank records, etc. There is thus no reason for any further particularization of the overt acts, the circumstances surrounding the alleged acts or any other evidentiary details.

## VIII. Severance

All defendants have filed motions seeking severance. Defendant Kareem argues in his motion and supplemental motion that the conspiracy charged in Count I has been improperly joined with the conspiracy charged in Count V. All defendants move for severance based on Fed. R.Crim.P. 14, arguing for severance of counts and/or defendants. And finally, defendants Brodie and Padonu move for severance from defendant Kareem's trial, and defendant Kareem moves for severance from defendant Brodie's trial,[12] because the introduction of pre-trial statements made by Brodie and Kareem would violate their Confrontation Clause rights under *Bruton.* These three grounds for severance are addressed *seriatim.*

### A. Joinder

In a case involving co-defendants, Fed. R.Crim.P. 8(b) controls joinder of both offenses and defendants. *United States v. Perry,* 731 F.2d 985, 989 (D.C.Cir.1984); *United States v. Jackson,* 562 F.2d 789, 793 (D.C.Cir.1977). Rule 8(b) states that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the

same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b); *see also United States v. Manner,* 887 F.2d 317, 324 (D.C.Cir.1989); *United States v. Brooks,* 567 F.2d 134, 138 (D.C.Cir.1977). As explained by the Court in *United States v. Brown,* 823 F.2d 591 (D.C.Cir.1987), in addressing a Rule 8(b) issue, a court must determine if there is a "logical relationship between the alleged same 'acts or transaction.'" *Id.* at 598 (finding that a "logical relationship" existed between the RICO predicate acts and those not charged as predicate acts since they were committed at the same times, by the same persons, and in accordance with the same general methods). *See also United States v. Nicely,* 922 F.2d 850, 853 (D.C.Cir.1991) (holding that the "logical relationship" test was not satisfied where conspiracy by defendants to induce computer seller to pay money to obtain subcontract to provide computers was combined with a conspiracy by defendants to violate federal currency reporting laws in connection with a money laundering scheme).

Contrary to defendant's argument, the two conspiracy counts are properly joined, for there is a "logical relationship" between them. The two conspiracies arise out of the same course of conduct—the flipping of properties, through the use of false documentation regarding the property's value, to defraud financial institutions. Moreover, defendant's citation to *Nicely* is inapposite. There, the two conspiracies were found to have nothing in common beyond a similarity in membership, for, as recognized by the Court, the use of falsehoods to obtain money is "patently insufficient grounds for joinder."

---

12. The Court will also consider whether the government's proposed redactions of defendant Brodie's statements violate defendant Padonu's rights under *Bruton.*

922 F.2d at 855. But here, the conspiracies are not comparable to those in *Nicely*. They have been properly joined in a single indictment, and defendant's misjoinder argument must be rejected. .

## B. Severance

Although Rule 8 joinder is appropriate in this case, defendants move, pursuant to Fed.R.Crim.P. 14, to sever their trials with respect to offenses and their co-defendants on the grounds that the potential prejudice from a joint trial is too great. Specifically, defendant Brodie moves to sever Counts I through IV from Count V, which charges Kareem and Padonu but not Brodie with a second conspiracy. Defendants Kareem and Brodie also move to sever the two conspiracy counts, arguing that it would be impossible to separate the evidence of the two counts.[13] Additionally, defendants Kareem and Padonu move to sever their trials from those of their co-defendants.

■ Fed.R.Crim.P. 14(a) permits the trial court to grant a severance of properly joined defendants or offenses if joinder "appears to prejudice a defendant or the government." The Supreme Court has defined prejudice in this context to be a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "Severance is not warranted in every case where there is some risk of prejudice." *United States v. Edelin*, 118 F.Supp.2d 36, 42 (D.D.C.2000). The key

to determining whether severance is appropriate is whether the "jury would be able to compartmentalize the evidence as it applies to different defendants and offenses." *Id.* at 44. The decision to sever falls within the discretion of the trial court, but generally the balance is to be struck in favor of a joint trial. *United States v. Bruner*, 657 F.2d 1278, 1289–90 (D.C.Cir. 1981).

■ Severance of counts is not warranted here. Defendant Brodie argues that he would suffer in a joint trial from an unfair transference of guilt or a spillover effect from the second conspiracy, with which he was not charged. Additionally, all three defendants argue that the evidence in the two conspiracy counts is extremely similar and it would be impossible for the government to keep the evidence of the two counts separate. However, even though the timing of the two conspiracies overlaps, the two conspiracies involve entirely different properties. There is simply no indication that the evidence as to the transactions underlying the Padonu–Kareem conspiracy implicates in any way Brodie, and thus, the jury would have no basis for associating Brodie with the second conspiracy.[14] *See United States v. Lewis*, 626 F.2d 940, 945 (D.C.Cir.1980) (severability was not required where evidence tending to prove each count was "separable and distinct"). Moreover, based on the government's representation that it will present the evidence of each transaction "consisting largely of mortgage loan documents, separately and in chrono-

---

**13.** Although defendant Padonu introduces his motion as one to sever defendants, the substance of the motion also argues that severance of counts is necessary. (Def. Padonu's Mot. to Sever ¶¶ 2–3.)

**14.** The government persuasively argues that the evidence of the second conspiracy may

actually serve to exculpate defendant Brodie, as the jury will hear evidence that, "exclusive of defendant Brodie, defendants Padonu and Kareem conspired to make false statements to mortgage lenders" in the second conspiracy. (Gov't Mot. at 50–51.)

logical order for each conspiracy," and that the vast majority of witnesses relate to one conspiracy or the other but not both (Gov't Mot. at 51–52), there is little chance that the jury will confuse the evidence as to the two conspiracies.[15] *See Drew v. United States,* 331 F.2d 85, 92 (D.C.Cir.1964) (if it appears that the prosecutor "might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly," severance is not necessary). Furthermore, the use of a limiting jury instruction will alleviate any risk of prejudice from a joint trial. *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Manner,* 887 F.2d at 325–26; *Drew,* 331 F.2d at 91 ("with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence" with respect to two counts "is substantially reduced").

■ Nor is severance of defendants warranted. Defendants Kareem and Padonu contend that their defenses are irreconcilable with those of their co-defendants. While "mutually antagonistic or irreconcilable defenses may be so prejudicial in some circumstances as to mandate severance," they are not prejudicial *per se. Zafiro,* 506 U.S. at 538, 113 S.Ct. 933. It is not enough to show some hostility among the defendants, or that the co-defendants'

strategies are generally antagonistic. *United States v. Gilliam,* 167 F.3d 628, 635 (D.C.Cir.1999); *United States v. Brown,* 16 F.3d 423, 433 (D.C.Cir.1994). Here, defendants have offered nothing other than vague assertions that their defenses will be conflicting and irreconcilable. There is no suggestion that any defendant will seek to prove the guilt of a co-defendant in order to prove his own innocence or that acceptance of one defense would preclude acceptance of the others. "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro,* 506 U.S. at 540, 113 S.Ct. 933. As found by the Court in *Edelin,* if one were to accept defendants' conclusory arguments, "*any* conspiracy trial would have to be severed." 128 F.Supp.2d at 50. Moreover, any prejudice from not severing offenses or defendants is the type that can be cured with proper jury instructions. *Zafiro,* 506 U.S. at 540, 113 S.Ct. 933; *Gilliam,* 167 F.3d at 636.

## C. Confrontation Clause

■ The Confrontation Clause of the United States Constitution provides the accused with "the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. It is clear that the right of confrontation "includes the right to cross-examine witnesses." *Richardson,* 481 U.S. at 206, 107 S.Ct. 1702. Thus, where two defendants are tried jointly, the

---

**15.** Defendant Kareem's contention that a joint trial of the two conspiracy charges would be prejudicial is undermined by the likelihood that, even if the counts were severed, the evidence of the uncharged conspiracy would still be admissible at trial pursuant to Fed. R.Evid. 404(b). *United States v. Carr,* 373 F.3d 1350, 1351 (D.C.Cir.2004) ("if the defendant had been tried separately on each count, then the same evidence concerning the perpetrator's *modus operandi* would have been admissible in each case under the identity ex-

ception "); *United States v. Levi,* 45 F.3d 453, 455 (D.C.Cir.1995) (same). Here, the *modus operandi* of the two conspiracies was similar in that they both involved the purchase of dilapidated real estate, followed by the immediate sale of the properties at an inflated price to a related buyer who had obtained an inflated mortgage based on false appraisals. *See* Fed.R.Evid. 404(b) (identity exception to the general rule against admission of evidence of other crimes).

pretrial statements of one may not be admitted against the other unless the confessing defendant takes the stand, even if the jury is instructed not to consider the statements against the separate, implicated defendant. *Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* applies to a co-defendant's statement that "expressly implicates the defendant," and as such, is "so incriminating that it constitutes an exception to the general proposition that a judge's limiting instruction will prevent any improper use of the statement by the jury." *United States v. Washington,* 952 F.2d 1402, 1404–05 (D.C.Cir.1991) (internal citation and quotation marks omitted).

■ Here, the government proposes to introduce redacted oral statements made by defendants Brodie and Kareem.[16] *Bruton* does not automatically require severance when a co-defendant's statement is proffered. Rather, *"Bruton* can be complied with by redaction." *Richardson,* 481 U.S. at 209, 107 S.Ct. 1702. Specifically, in *Richardson,* the Court noted that there is no violation if the statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. 1702. Several of the government's redactions remove all reference to the defendants, and thus they comply with *Bruton.* (*See* Gov't Mot. at 31, 35, 38–40 [Proffered Statements of Def. Kareem Nos. 10, 20, 25, 26, 30].)

■ Other proffered redactions replace defendants' names with neutral words or phrases such as "others" or "another." (Gov't Mot. at 32, 37, 42) (Proffered Statements of Def. Kareem Nos. 12,

13, 22, 34].) The D.C. Circuit, construing *Richardson,* has held that where "all references to the defendant in a co-defendant's statement are replaced with indefinite pronouns or other general terms," admitting the redacted statement does not violate the Confrontation Clause if, "when viewed together with other evidence, the statement does not create an *inevitable association* with the defendant, and a proper limiting instruction is given." *Washington,* 952 F.2d at 1406–07 (emphasis added). Thus, substituting the defendant's name with "others at the scene" or "an individual" does not violate the Confrontation Clause. *Id.* at 1406.

After the D.C. Circuit's decision in *Washington,* the Supreme Court clarified that a redaction that leaves an obvious blank or notifies the jury that a name has been deleted will not suffice because such a redaction functions like an unredacted statement that names the defendant—both are "directly accusatory." *Gray v. Maryland,* 523 U.S. 185, 194, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). That is, *Richardson* "placed outside the scope of *Bruton's* rule those statements that incriminate inferentially," or only when linked with evidence introduced later at trial. *Id.* at 195, 118 S.Ct. 1151 (citing *Richardson,* 481 U.S. at 208, 107 S.Ct. 1702); *see also United States v. Wilson,* 160 F.3d 732, 740 n. 5 (D.C.Cir.1998) (statement that named defendant but became incriminating only when combined with other evidence did not require severance as "statements that incriminate only inferentially are outside the scope of *Bruton* "). But statements that, "despite redaction, obviously refer directly to someone, often obviously to [de-

16. The government has agreed to strike one of defendant Kareem's proffered statements. (Gov't Mot. at 27 [Proffered Statement No. 3].) The oral statements at issue include pre-arrest statements made by defendant Brodie on November 9, 2001, post-arrest statements by defendant Brodie on April 29, 2003, and post-arrest statements by defendant Kareem on November 20, 2003. The government has represented that it does not plan to introduce a handwritten statement signed by defendant Kareem after his arrest.

fendant], and involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial," violate *Bruton's* rule. *Gray*, 523 U.S. at 186, 118 S.Ct. 1151. Judged by these standards, the government's redactions that replace the defendants' names with general terms (*i.e.,* "others" or "another") neither create an inevitable association with defendants nor invite inferences that a jury could make immediately without the aid of other evidence. *See United States v. Cuong Gia Le,* 316 F.Supp.2d 330, 338 n. 8 (E.D.Va. 2004) ("[R]eferences to 'another individual' point[ ] no accusatory finger at a specific defendant, as gang members, other than the defendants, could fit the bill.").

■■■ Another category of the government's proposed redactions replaces the names of defendants Kareem and Padonu with the term "loan officer" or "loan officers." (Gov't Mot. at 25–26, 29–30, 32–33, 35, 43 [Proffered Statements of Def. Brodie Nos. 2, 5 and Proffered Statements of Def. Kareem Nos. 6, 7, 13, 14, 19, 38].) A redaction may not use a general term that creates an "obvious pointer" to the defendant. *United States v. Hoover,* 246 F.3d 1054, 1059 (7th Cir.2001). In *Hoover,* the government redacted the names of two defendants convicted of running a criminal enterprise, replacing them with the terms "incarcerated leader" and "unincarcerated leader." *Id.* In other words, the redacted statement ascribed to the defendants "aliases based on their occupations" with respect to the criminal operation. The Seventh Circuit found that "the proposition that replacing a name with a pseudonym is proper unless the identity of the alias can be deduced within the four corners of the confession is incompatible with *Gray* . . . ." *Id.* The suggested redactions did not "avoid[ ] a one-to-one correspondence between the confession and easily

identified figures sitting at the defense table," and were "just the sort of symbols that the majority in *Gray* had in mind." *Id.* Similarly here, the government proposes to replace defendants' names with aliases based on their occupations: "loan officer" or "loan officers." The proposed redactions incriminate through inferences a jury could make immediately upon hearing the substituted term, not those that require linkage with other evidence introduced later at trial. *Gray,* 523 U.S. at 196, 118 S.Ct. 1151. *See also United States v. Richards,* 241 F.3d 335, 341 (3d Cir.2001) (substituting "inside man" and "my friend" for names of other participants in the crime violated *Bruton* ). As such, these redacted statements, which amount to "obvious pointers" to defendants, fall within *Bruton's* protection, and they will not be permitted.

Next, several proffered statements identify defendants' employers. The government has replaced the names of defendants Brodie and Padonu with the general term "borrower," but has proposed to retain the identification of defendants' employers. For example, the government proposes substituting defendant Kareem's statements that various forms used in the flipping scheme listed defendant Brodie's employer as ICN with a statement that the form lists "ICN as the borrower's employer." (Gov't Mot. at 37, 41 [Def. Kareem's Proffered Statement Nos. 23, 33].) Similarly, the government proposes substituting Kareem's statement that a company called Osessi is "listed as defendant Padonu's employer" with "Osessi is listed as the borrower's employer." (Gov't Mot. at 41–42 [Def. Kareem's Proffered Statement No. 34].) Unlike "loan officer," the general term "borrower" does not constitute an obvious pointer to defendants. The question, then, is whether associating the "borrower" with defendants' employers amounts to an inevitable association, or

creates an inference that jurors could make immediately without reference to other evidence.

■ Applying the teaching of *Richardson, Gray, Washington,* and *Hoover,* the answer must be no. In order to find these statements inculpatory with respect to defendants Brodie and Padonu, jurors would need to link the statements with evidence that defendants acted as borrowers in these transactions, as well as evidence establishing that defendants Brodie and Padonu were employed by ICN and Osessi, respectively. In other words, the statements become incriminating only "when linked with evidence introduced later at trial." *Richardson,* 481 U.S. at 201, 107 S.Ct. 1702. The statements do not create an inevitable association with defendants or provide obvious pointers to them. *Washington,* 952 F.2d at 1406–07; *Hoover,* 246 F.3d at 1059. Nor do the statements involve inferences that the jury might draw immediately before any other evidence is introduced. *Gray,* 523 U.S. at 196, 118 S.Ct. 1151. This type of inferential incrimination is far less obvious than testimony specifically identifying the defendants, and thus, "the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place." *Richardson,* 481 U.S. at 208, 107 S.Ct. 1702.

Finally, several of the proffered statements refer to a defendants' relationship with some third party. These have not been redacted. For instance, defendant Kareem's proffered statement indicates that "[d]efendant Brodie's girlfriend was Dorothy Wallace, a Jamaican." (Gov't Mot. at 36–37 [Proffered Statement of Def. Kareem No. 22].) The government also proposes to introduce Kareem's statements regarding defendant Padonu's friendship with Heralda Avery, whom Kareem identifies as being involved in the flipping scheme (*id.* at 39, 43 [Proffered Statements of Def. Kareem Nos. 27, 37]), and a statement regarding defendant Kareem's identification of a potential purchaser as defendant Padonu's wife. (*Id.* at 40 [Proffered Statements of Def. Kareem No. 28].) The government claims that these statements are admissible against defendants Brodie and Kareem under Fed. R.Evid. 803(19).

Rule 803(19) is an exception to the hearsay rule for statements about

> [r]eputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.

Reputations "regarding relationships and other personal and family matters within a well-defined community are considered to have the circumstantial guarantee of trustworthiness that justifies a hearsay exception." *Blackburn v. United Parcel Serv.,* 179 F.3d 81, 98 (3d Cir.1999). A well-grounded belief that two people are married is one such relationship, *id.,* though it less clear whether Rule 803(19) applies to statements about a "friendship" or "girlfriend" relationship.

But even assuming that defendant Kareem's statements about these relationships fall within Rule 803(19), a foundation must be established for their admissibility. Specifically, the statement must be sufficiently trustworthy.

> Trustworthiness in reputation evidence is found when the topic is such that the facts are likely to have been inquired about and that persons having personal knowledge have disclosed facts which have thus been *discussed in the community; and thus the community's conclu-*

*sion, if any has been formed, is likely to be a trustworthy one.*

*United States v. Lyons Capital, Inc.,* No. 99cv4178, 2000 WL 1792985, at *7 (5th Cir. Dec. 7, 2000) (emphasis in original) (quoting 5 Wigmore § 1580, at 444). A proponent of reputation testimony must establish that it "arises from sufficient inquiry and discussion among persons with personal knowledge of the matter to constitute a trustworthy 'reputation.'" *Blackburn,* 179 F.3d at 100. If the person heard of the relationship "from some unknown source," it would be inadmissible, as "what is required is the laying of a foundation of knowledge grounded in inquiry, discussion, interactions, or familiarity 'among a person's associates, or in the community."' *Id.* (quoting Fed.R.Evid. 803(19)). For example, *Blackburn* found that a statement that two individuals were related, which was "something that I was told by someone I worked with," did not meet the requirements of Rule 803(19), nor did a statement that "it was my understanding" that two individuals were related. *Id.* at 102.

█ The appropriate foundation has not been established here. What is proffered is simply defendant Kareem's statements about the other defendants' relationships without any information to establish a basis for this knowledge. Absent the necessary foundation, the statements are inadmissible under Fed. R.Evid. 803(19), and the government's proposal to introduce them in an unredacted form is rejected.[17]

## CONCLUSION

For the reasons stated above, defendants' motions are denied except that the government must identify the co-conspirators referred to in Counts I and V; the redactions that reference "loan officers" will not be admitted into evidence; and the statements offered as to relationships are not admissible under Fed.R.Evid. 803(19) and thus are not admissible under *Bruton.*

A separate Order accompanies this Memorandum Opinion.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' motions to dismiss Count I, to dismiss the indictment based on speedy trial and multiplicity arguments, to strike aliases, to suppress statements obtained in violation of the Vienna Convention on Consular Relations, and to sever are **DENIED;** it is

**FURTHER ORDERED** that defendants' request for a bill of particulars and a pretrial hearing to determine the admissibility of co-conspirator statements is **DENIED** except that the government shall disclose the names of all alleged co-conspirators referred to in Counts I and V within ten (10) days of the date of this Order, it is

**FURTHER ORDERED** that the defendants' motion to sever based on *Bruton* is denied except that the government's proposed redactions relating to "loan officers" and those statements offered under Fed. R.Evid. 803(19) will not be permitted.

**IT IS SO ORDERED.**

---

**17.** Given the Court's ruling here, it need not address the more difficult question of whether these redacted statements would be admissible under the Supreme Court's recent decision in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).