# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 11 2019, 7:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Deckard
Bloom Gates Shipman &
Whiteleather LLP
Columbia City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bruce A. Wilson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | July 11, 2019 <br><br> Court of Appeals Case No. 18A-CR-3092 <br><br> Appeal from the Whitley Circuit Court <br><br> The Honorable James R. Heuer, Senior Judge <br><br> Trial Court Cause No. 92C01-1801-F4-5 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Bruce Wilson was convicted of burglary, a Level 4 felony, and theft, a Level 6 felony, and found to be an habitual offender. The trial court sentenced Wilson to twelve years in the Indiana Department of Correction ("DOC") enhanced by ten years based on Wilson's habitual offender status, for a total sentence of twenty-two years. Wilson appeals and presents two issues for our review which we restate as: (1) whether the trial court abused its discretion in admitting testimony of Wilson's familial relationship with Tina Schmidt as an exception to hearsay under Indiana Rule of Evidence 803(19); and (2) whether the trial court abused its discretion in sentencing Wilson. Concluding the trial court abused its discretion in admitting inadmissible hearsay but that such error was harmless, and the trial court did not abuse its discretion in sentencing Wilson, we affirm.

# Facts and Procedural History

[2] On December 23 or 24, 2016, Ronald Wesenberg and Linda Ort left their home in Whitley County, Indiana, to visit family in Pennsylvania. While traveling, they stopped at Tina Schmidt's house in Ohio. Tina is the girlfriend of Ort's son. The couple dropped off Christmas presents for Ort's son and Tina and also for Tina's grandson, visited for a half-hour, and then continued on their trip. On their way back to Indiana, Wesenberg and Ort stopped at Tina's house again to drop off boots for Tina's grandson, and then headed home.

[3] When the couple returned to their home on December 28, they found that it had been "ransacked." Transcript of Proceedings, Volume II at 51. "[A]ll of [their] files had been gone through, they were picked up and dumped down on the floor. Jewelry boxes open, dumped on the floor. The drawers in the living room, books that were on the bookshelf had been pulled off and they were on the floor. Papers [were] all over the place." *Id.* at 21. Wesenberg and Ort contacted the Whitley County Sheriff's Office and two deputies responded. Detective Andrew Mills and Sergeant John Petro, both with the Indiana State Police ("ISP"), arrived shortly thereafter and began investigating. Many items were missing from the home, including tools, a generator, a power washer, four handguns, jewelry, televisions, a speaker bar, several vacuum cleaners, and an antique money collection. Wesenberg went into the garage and immediately noticed that his brand new 2016 Chevrolet Cruz appeared to be dirty and had large scratch marks on the hood, and the gas tank was empty even though Wesenberg always kept the tank full. A key-fob for the vehicle was located in a toolbox in the garage; Wesenberg told Sergeant Petro he did not leave the fob in that location.

[4] Later, while cleaning the upstairs computer room, Wesenberg discovered a handkerchief[1] on the floor that did not belong to him or Ort. Wesenberg placed the handkerchief in a clear plastic bag. He also discovered a broken tip of a knife in a door casing, pulled it out with a pair of pliers, and placed it in a

---

[1] Handkerchief and "bandana" are used interchangeably in the record.

plastic bag. Wesenberg provided the items to Detective Mills and then Sergeant Petro submitted the items to the lab. Testing of the handkerchief and a swab of the gear shift lever from the Chevrolet Cruz revealed a DNA profile matching Wilson.[2]

[5] On January 9, 2018, the State charged Wilson with Count I, burglary, a Level 4 felony, and Count II, theft, a Level 6 felony. The State also filed a Notice of Intent to Seek Habitual Offender Status due to Wilson's previous convictions for theft and felony burglary.

[6] During the jury trial, the State asked Ort whether she knew Wilson and she responded that she did not. The State then asked if she was able "to discover anything about [Wilson]?" Tr., Vol. II at 46. Defense counsel objected based on hearsay, but the trial court overruled the objection because Indiana Rule of Evidence 803(19) declares a statement of familial relationship to be an exception to hearsay. Over the defense's continuing objection, Ort stated that she learned from her son, who was Tina's boyfriend, and from Tina's daughter that Wilson is Tina's nephew. Jessica Gresko, an acquaintance of Wilson's, testified that on January 5, 2017, Wilson came to her house and offered to sell her old bills, coins, and certificates. Similarly, Eric McHale, a friend of Wilson's, testified that in late 2016 or early 2017 Wilson had offered to sell him guns that matched the description of the guns stolen from Ort and Wesenberg.

---

[2] Two other DNA profiles were found on the gear shift lever, but the forensic biologist from the ISP was unable to conclude whose they were.

Wilson told McHale that he got the guns "at a robbery" of a family member in Fort Wayne. *Id*. at 134.

[7] The jury found Wilson guilty as charged and in the second phase of the trial, found him to be an habitual offender. At the sentencing hearing, the trial court found no mitigating circumstances and identified the following aggravating circumstances: (1) Wilson's juvenile history; (2) his prior adult criminal history; (3) his "significant history" of violating probation; (4) significant victim impact; and (5) the victims' ages. Appealed Order at 1. The trial court sentenced Wilson to twelve years for his burglary conviction and a concurrent term of two and one-half years for his theft conviction. Wilson's sentence was enhanced by ten years based on the habitual offender finding for a total of twenty-two years in the DOC. Wilson was also ordered to pay $34,337.43 in restitution. Wilson now appeals. Additional facts will be provided as needed.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[8] Our standard of review in this area is well settled. Generally, the admission of evidence is within the sound discretion of the trial court, which we afford great deference on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). Thus, "[b]ecause the trial court is best able to weigh the evidence and assess witness credibility," *id*., the decision to admit evidence will not be reversed absent a

showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial, *Simmons v. State*, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002). An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004).

## B. Hearsay

Wilson argues that the trial court abused its discretion by admitting evidence of his familial relationship to Tina Schmidt because it is inadmissible hearsay.

"Hearsay" is defined as an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless it meets one of the exceptions to the hearsay rule. Evid. R. 802. One such exception is a statement regarding

> [a] reputation among a person's family by blood, adoption, or marriage – or among a person's associates or in the community – concerning the person's birth, adoption, legitimacy, ancestry, marriage, divorce, death, relationship by blood, adoption, or marriage, or similar facts of personal or family history.

Evid. R. 803(19).

At trial, when Ort was asked about Wilson's relationship to Tina, defense counsel objected, and the trial court overruled the objection based on Rule 803(19). Ort then testified that she did not know Wilson, but knew he was Tina's nephew, a fact she learned from her son and from Tina's daughter. Here, Wilson argues that, pursuant to Rule 803(19), the State failed to

demonstrate that Ort was part of or had sufficient contact with Wilson or Tina's community, and she learned of Tina and Wilson's familial relationship from only two individuals which is not sufficient to demonstrate the beliefs of a "community." The State, on the other hand, asserts that Ort is a member of Wilson's community because her son dated Tina – Wilson's aunt – and that Ort's visits to Tina's house while on vacation demonstrate that she was a "close member of [Tina's] community[.]" Brief of Appellee at 9.

[12] Initially, we acknowledge there is limited case law interpreting Indiana's Rule 803(19) exception to the hearsay rule. As our supreme court has explained, however, although a federal court's interpretation of the Federal Rules of Evidence is not binding upon our courts, "due to the similarity between the Indiana Rules of Evidence and the Federal Rules of Evidence, federal case law interpreting the Federal Rules of Evidence may be of some utility." *Griffith v. State*, 31 N.E.3d 965, 969 (Ind. 2015) (internal quotation omitted). In interpreting Federal Rule of Evidence 803(19), which is virtually identical to Indiana's rule, the United States District Court for the District of Columbia explained:

> Reputations "regarding relationships and other personal and family matters within a well-defined community are considered to have the circumstantial guarantee of trustworthiness that justifies a hearsay exception." *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 98 (3d Cir. 1999). A well-grounded belief that two people are married is one such relationship, *id.*, though it [is] less clear whether Rule 803(19) applies to statements about a "friendship" or "girlfriend" relationship. But even assuming . . . statements about these relationships fall within 803(19), a

foundation must be established for their admissibility. Specifically, the statement must be sufficiently trustworthy.

* * *

A proponent of reputation testimony must establish that it "arises from sufficient inquiry and discussion among persons with personal knowledge of the matter to constitute a trustworthy 'reputation.'" *Blackburn*, 179 F.3d at 100. If the person heard of the relationship "from some unknown source," it would be inadmissible, as "what is required is the laying of a foundation of knowledge grounded in inquiry, discussion, interactions, or familiarity 'among a person's associates, or in the community.'" *Id*. (quoting Fed. R. Evid. 803(19)).

*United States v. Brodie*, 326 F.Supp.2d 83, 97-98 (D.D.C. 2004).

[13]    The *Blackburn* court reviewed several cases and discerned the following principle about what is required to lay an adequate foundation under the rule:

A witness who wishes to testify about someone's reputation within a community must demonstrate that he or she knows of the person and is truly familiar with the "community" in which the reputation has been formed, and the basis of the reputation is one that is likely to be reliable. Where the alleged reputation is based on nothing more than rumors of unknown origins, or a single instance of "someone told me so," a proper foundation has not been laid for admitting such evidence under Rule 803(19).

*Blackburn*, 179 F.3d at 101 (footnote omitted). In the instant case, we conclude the State failed to lay an adequate foundation to establish that Ort knew of Wilson and was "truly familiar with the 'community' in which the reputation

has been formed[.]" *Id*. At trial, Ort testified that Tina is her son's girlfriend. She further testified that she visited Tina in Ohio twice while on vacation to drop off Christmas presents and briefly visit with Tina and Tina's grandson. Ort next testified that she visited Tina "on the way back" from Pennsylvania, because while Ort was in Pennsylvania, she "went to a little mall and I saw some boots for [Tina's grandson] and he didn't have boots, so I bought him a pair. So[,] we brought them and dropped them off." Tr., Vol. II at 42. She further testified that Tina was Wilson's aunt – information she learned from her son, who was Tina's boyfriend, and from Tina's daughter. The record linking Ort to Wilson's community is thin and thus, fails to establish that her knowledge of Wilson's familial relationship arose "from sufficient inquiry and discussion among persons with personal knowledge of the matter to constitute a trustworthy 'reputation.'" *Brodie*, 326 F.Supp.2d at 98. Because an adequate foundation was not established, Ort's testimony that she learned of Wilson's familial relationship from her son and Tina's daughter constitutes inadmissible hearsay.

[14] Having concluded the trial court erred in admitting inadmissible hearsay, we address whether such error was harmless. We disregard error in the admission of evidence unless it affects the substantial rights of a party. *Simmons*, 760 N.E.2d at 1160. "An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor that it did not affect the substantial rights of the party." *Id*. Wilson argues that the erroneous admission of the hearsay statements impaired his substantial rights because the

State "used the connection between Mr. Wilson and Tina Schmidt to argue Mr. Wilson's knowledge that Mr. Wesenberg and Ms. Ort's house would be unoccupied which provided him the opportunity to burglarize it[.]" Brief of Appellant at 12. Even though the trial court abused its discretion in admitting Ort's testimony, any error was harmless under the totality of the evidence presented at trial, especially evidence that Wilson's DNA was discovered on the handkerchief and in Wesenberg's vehicle. *Simmons*, 760 N.E.2d at 1160 (admission of hearsay testimony was harmless because "at most, [it had] a slight impact on the jury's verdict" given the incriminating DNA evidence, testimony, and physical evidence presented at the defendant's murder trial). Accordingly, Wilson has not demonstrated the trial court's error constituted reversible error.

## II.  Wilson's Sentence

[15]    Wilson argues that his sentence "is inappropriate because there was insufficient evidence to support the Court's determination as an aggravating circumstance that [he] had a significant history of violating probation." Br. of Appellant at 13. Although Wilson cites to Indiana Appellate Rule 7(B), which authorizes this court to revise a defendant's sentence if we find it inappropriate in light of the nature of the offense and the character of the offender, and he contends that his aggregate sentence is inappropriate in light of that standard, any potential 7(B) argument stops there. Wilson fails to develop a cogent argument that his twenty-two-year sentence is inappropriate under the standard. Instead, the crux of Wilson's argument is that the trial court's finding that he had a "significant

history of violating probation" is unsupported by the record and thus, the trial court abused its discretion in identifying it as an aggravating circumstance. We therefore conclude Wilson has waived appellate review of his sentence under Rule 7(B) for failure to make a cogent argument and we address only his abuse of discretion argument. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning . . . [and] must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").

[16] Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Thus, we review only for an abuse of discretion, which occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before [it], or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. A trial court may abuse its discretion by: (1) failing to enter a sentencing statement; (2) entering a sentencing statement that explains reasons for imposing the sentence that are unsupported by the record; (3) omitting reasons clearly supported by the record and advanced for consideration; or (4) finding factors that are improper as a matter of law. *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012). The identification or omission of reasons provided for imposing a sentence are reviewable on appeal for an abuse of discretion, but the weight given to those reasons is not subject to appellate review. *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied*.

Here, Wilson argues the trial court abused its discretion by entering a sentencing statement that explains reasons for imposing the sentence that are unsupported by the record. At the sentencing hearing, the trial court identified numerous aggravators, including Wilson's juvenile history, adult criminal history, significant victim impact, the age of the victims, and a significant history of probation violations. Specifically, Wilson challenges the trial court's identification of his history of probation violations as an invalid aggravating circumstance because "[t]here is no evidence in the record to support a finding of a 'significant' history' of violating probation . . . or that he was a poor probation risk[.]" Br. of Appellant at 14-15.

Wilson is correct. Our review of Wilson's presentence investigation report indicates that he violated the terms of his probation in 2008. As a result, his probation was partially revoked. It is true that Wilson has at least one probation violation, but the finding that Wilson has a *significant history* of probation violations is unsupported by the evidence in the record. It is therefore an invalid aggravating circumstance. Nonetheless, "[o]ur supreme court has held that a sentence may be upheld where a single aggravating factor supports it, so long as we can say with confidence that in the absence of the invalid aggravators the trial court would have imposed the same sentence." *Phelps v. State*, 914 N.E.2d 283, 293 (Ind. Ct. App. 2009) (citing *Bacher v. State*, 722 N.E.2d 799, 803 (Ind. 2000)). Wilson does not challenge the remaining four aggravating factors identified by the trial court, which are all valid aggravating circumstances supporting his enhanced sentences. *See Gibson v.*

*State*, 702 N.E.2d 707, 710 (Ind. 1998) ("Because a valid unchallenged aggravator remains, and because we find that the trial court did not abuse its discretion to impose the enhanced sentence based on that aggravator, the defendant's claim fails."), *cert. denied*, 531 U.S. 863 (2000). We are confident that the trial court would have imposed the same sentence in the absence of this one invalid aggravator; therefore, the trial court did not abuse its discretion in sentencing Wilson.

# Conclusion

[19] For the foregoing reasons, we conclude the trial court abused its discretion in admitting inadmissible hearsay but that such error was harmless. We also conclude the trial court did not abuse its discretion in sentencing Wilson. Accordingly, we affirm the trial court.

[20] Affirmed.

Baker, J., and Najam, J., concur.