**Jeffrey PHELPS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A02–0903–CR–206.**

Court of Appeals of Indiana.

Oct. 5, 2009.

Jill A. Gonzalez, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeler, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Jeffrey Phelps (Phelps), appeals his sentence for vicarious sexual gratification, as a Class D felony, Ind.Code § 35–42–4–5(c); vicarious sexual gratification, as a Class C felony, I.C. § 35–42–4–5(a); dissemination of matter harmful to a minor, a Class D felony, I.C. § 35–49–3–3; and the trial court's determination that he is violent sexual predator.

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

Phelps raises four issues, which we consolidate and restate as the following three:

(1) Whether the trial court's determination that he is a sexually violent predator is supported by sufficient evidence;

(2) Whether the trial court erred when it permitted the State to question him when he made a sentencing statement; and

(3) Whether the trial court abused its discretion when sentencing him.

### FACTS AND PROCEDURAL HISTORY

On September 29, 2006, the son of one of Phelps' friends called Phelps and asked if he and his two cousins could come to Phelps' home to play video games and shoot pool.[1] The three boys were all between the ages of thirteen and fourteen. Phelps had turned the boys down before, but decided it was okay this time, and went and picked the boys up. Later that evening, one of the boys asked Phelps if they could watch a pornographic movie, telling Phelps that he had watched them before. Phelps conceded and played a pornographic movie. The boy asked if he could masturbate, and Phelps said "go for it." (Appellant's App. Vol. II, p. 181). The boy asked if Phelps was going to join and Phelps "thought what the hell, we are boys doing a normal thing boys do all the time," and began masturbating as well. (Appellant's App. Vol. II, p. 181). The other two boys came into the room and masturbated as well.

On March 27, 2007, the State filed an Information charging Phelps with thirteen counts: Count 1, sexual misconduct with a minor, a Class B felony, Ind.Code § 35–42–4–9; Count 2, sexual misconduct with a minor, a Class B felony, I.C. § 35–42–4–9; Count 3, sexual misconduct with a minor, a Class C felony, I.C. § 35–42–4–9; Count 4, contributing to the delinquency of a minor, I.C. § 35–46–1–8; Count 5, sexual misconduct with a minor, a Class C felony, I.C. § 35–42–4–9; Count 6, vicarious sexual gratification, a Class D felony, I.C. § 35–

---

1. Due to the manner in which the factual basis was established, we rely upon Phelps' statement in the Pre–Sentence Investigation Report and his statement at the sentencing hearing for the facts, although it appears that neither statement was made under oath.

42-4-5; Count 7, contributing to the delinquency of a minor, a Class A misdemeanor, I.C. § 35-46-1-8; Count 8, contributing to the delinquency of a minor, a Class A misdemeanor, I.C. § 35-46-1-8; Count 9, contributing to the delinquency of a minor, a Class A misdemeanor, I.C. § 35-46-1-8; Count 10, sexual misconduct with a minor, a Class C felony, I.C. § 35-42-4-9; Count 11, child solicitation, a Class D felony, I.C. § 35-42-4-6; Count 12, contributing to the delinquency of a minor, a Class A misdemeanor, I.C. § 35-46-1-8; and Count 13, dissemination of matter harmful to minors, a Class D felony, I.C. § 35-49-3-3.

Phelps and the State came to an agreement wherein Phelps agreed to plead guilty to: Count 5, sexual misconduct with a minor, as a Class D felony as opposed to the originally charged Class C felony; Count 6, sexual gratification as a Class C felony, as opposed to the originally charged Class D felony; and Count 13, dissemination of matter harmful to a minor, a Class D felony. In exchange, the State agreed to dismiss the remaining charges and recommend to the trial court certain fees and fines, and an executed sentence of no more than eight years with the parties free to argue how, if any, executed time would be served.

On April 7, 2008, the trial court took the plea agreement under advisement and appointed Doctors Frank Krause (Dr. Krause) and Craig E. Buckles (Dr. Buckles) to evaluate whether Phelps is a sexually violent predator. Dr. Krause, an Indiana Licensed Clinical Psychologist, concluded that in his "professional opinion that after reviewing court documents, interviews, and results of psychological testing, [ ] Phelps should not be classified as a sexually violent predator. . . ." (Appellant's App. Vol. II, p. 170). Dr. Buckles found that Phelps does not have a mental illness,

that he had no evidence that Phelps was a pedophile, and, therefore concluded that Phelps "is not a sexually violent predator." (Appellant's App. Vol. II, p. 191).

On October 30, 2008, the trial court conducted a sentencing hearing. At the onset of the hearing, it noted inconsistencies between the specific statutes relied upon and the factual basis established to satisfy the elements of those crimes as listed in the plea agreement. To cure the defect, the parties agreed to make Count 5, vicarious sexual gratification, as a Class D felony, I.C. § 35-42-4-5(c)(3), and Count 6, vicarious sexual gratification, as a Class C felony, I.C. § 35-42-4-5(a)(1), so that the facts admitted by Phelps would satisfy the elements of the crimes which he pled guilty to with the culpability level remaining the same as that contained in the plea agreement. Count 13 remained the same throughout. The trial court accepted Phelps' plea of guilty and proceeded with a sentencing hearing. When considering the mitigating and aggravating circumstances the trial court found the following aggravating factors: that Phelps had violated a position of trust; that he had exercised a high degree of planning and care to execute the offense; that "[b]ased on the psychological evaluation and the circumstances surrounding the offense, there is a high probability [that Phelps] will commit another offense"; and that Phelps exhibited limited remorse. (Appellant's App. Vol. I, p. 115). The trial court found the following to be mitigating factors: his medical ailments, and his high degree of family support. Based on its consideration of those factors the trial court sentenced Phelps to two years on Count 5, four years for Count 6, and two years for Count 13, all to be served consecutively in the Department of Correction. In addition, the trial court assessed $100 for court costs, a $100 fine, and ordered Phelps to pay an additional $500 to the sexual assault vic-

tims assistance fund and to subject to testing for HIV Aids. The next day, the trial court made an entry of its determination that Phelps is a sexually violent predator.

On November 25, 2008, Phelps filed a motion to correct error. On January 25, 2009, the trial court conducted a hearing on the motion to correct error, and on February 27, 2009, the trial court denied the motion.

Phelps now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. *Sexually Violent Predator*

■ Phelps argues that the trial court's determination that he is a sexually violent predator was not supported by sufficient evidence. Indiana Code section 35–38–1–7.5(a) states that a " 'sexually violent predator' means a person who suffers from mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11–8–8–5.2)." Subsection (b) states that persons who commit certain crimes and have certain unrelated prior convictions or juvenile adjudication are sexually violent predators. Phelps had no prior unrelated convictions or adjudications as a delinquent child for any crimes; therefore, he is not a sexually violent predator by operation of law. *See* I.C. § 35–38–1–7.5(b). However, a court can find that a person is a sexually violent predator under subsection (a) after considering the testimony of two psychologists or psychiatrists who have expertise in criminal behavioral disorders. I.C. § 35–38–1–7.5(e). The trial court made such a finding, which we now review.

■ "When a defendant makes a sufficiency-of-the-evidence challenge to a trial court's [sexually violent predator] finding, our inquiry is whether there was substantial evidence of probative value to support the trial court's finding that the defendant suffers from a mental abnormality or personality disorder that makes him or her likely to repeatedly commit the enumerated sex or violent offenses." *Williams v. State,* 895 N.E.2d 377, 385 (Ind.Ct.App. 2008). As with other considerations of the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Scott v. State,* 895 N.E.2d 369, 374 (Ind.Ct.App.2008). We will consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from that evidence, affirming the trial court if it is supported by substantial evidence of probative value. *Id.*

■ As we have explained above, neither expert appointed by the trial court concluded that Phelps is a sexually violent predator. This seems to weigh heavily in favor of a conclusion that Phelps is not a sexually violent predator. However, it does not necessarily preclude a determination that the defendant is a sexually violent predator. "The statute at issue here only requires the court to consult with experts. The opinions of the experts are not binding upon the trial court...." *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App. 2002). Indeed, considering our standard of review, we should not rely upon the expert opinions to refute any positive evidence presented by the state proving that a defendant is a sexually violent predator.

That being said, we can refer to the expert opinions to reveal a void of evidence that would otherwise prove an element of the sexually violent predator status. Dr. Krause specifically concluded that Phelps "does not have symptoms of a mental abnormality or disorder that make him likely to repeatedly engage in any of the offenses

described in I.C. 11–8–8–5." [2] (Appellant's App. Vol. II, p. 169). In addition, Dr. Buckles concluded that Phelps "does not have a mental illness." (Appellant's App. Vol. II, p. 191). The State presented no evidence which would prove or support an inference that Phelps had any mental abnormality or personality disorder, much less one that would make Phelps likely to commit sex offenses again. Therefore, the trial court's determination that Phelps is a sexually violent predator, which requires a "mental abnormality or personality disorder" was not supported by sufficient evidence and must be reversed.

## II. Cross–Examination During Phelps' Statement

■■■ Phelps argues that the trial court erred by permitting the State to cross-examine him when he made his statement at the sentencing. Defendants hold a right of allocution wherein they have an opportunity to speak for himself or herself. *Biddinger v. State*, 868 N.E.2d 407, 413 (Ind.2007). "[T]he purpose of the right of allocution is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the defendant in the case before it." *Id.* (quoting *Ross v. State*, 676 N.E.2d 339, 343 (Ind.1996)). The purpose of allocution is undermined when a defendant's statement is subjected to cross-examination, and, therefore, should not be subject to cross-examination. *Id.*

■■■ However, Phelps did not object to the State's cross-examination during his statement at the sentencing hearing. Generally, a failure to object during the trial court proceeding results in waiver of that issue for appeal unless the unpreserved error constitutes fundamental error. *See Kimbrough v. State*, 911 N.E.2d 621, 634 (Ind.Ct.App.2009). This waiver rule has

been applied where a probationer failed to ask for an opportunity to exercise his right of allocution. *Hull v. State*, 868 N.E.2d 901, 903 (Ind.Ct.App.2007). And, we conclude that it applies equally where a defendant permits the State to cross-examine during allocution without objection. Phelps makes no claim of fundamental error; therefore, we conclude he has waived his claim of error caused by the State's cross-examination.

## III. Sentencing

■■■ Phelps raises a myriad of arguments in support of his contention that the trial court abused its discretion when sentencing him. When sentencing a defendant, the "trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). As long as the sentence imposed by the trial court is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Ways in which trial courts may abuse their discretion include: wholly failing to issue a sentencing statement; issuing a sentencing statement that bases a sentence on reasons that are not supported by the record, or that includes reasons that are improper as a matter of law. *Id.* at 490–491.

### A. Omission of a Significant Mitigating Factor

Phelps first contends that the trial court abused its discretion by failing to acknowl-

---

2. Indiana Code section 11–8–8–5 lists the offenses that, if committed, would define an

individual as a "sex or violent offender."

edge the significant mitigating factor that Phelps had no criminal history in the written sentencing order.

■■■■ It is within the trial court's discretion to determine the existence and weight of a mitigating factor. *Creager v. State,* 737 N.E.2d 771, 782 (Ind.Ct.App. 2000). A defendant must demonstrate that mitigating evidence is both significant and supported by the record to establish that the trial court failed to identify the evidence as a mitigating factor. *Anglemyer,* 868 N.E.2d at 493. When a trial court fails to find a mitigating factor that is clearly supported by the record, a reasonable belief arises that the trial court improperly overlooked that factor. *Banks v. State,* 841 N.E.2d 654, 658 (Ind.Ct.App. 2006), *trans. denied.*

We have acknowledged that "[a] lack of criminal history is often given significant mitigating weight." *McClendon v. State,* 910 N.E.2d 826, 837 (Ind.Ct.App.2009). Additionally, that a "person has no history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before the commission of the crime" is a factor which is a mitigating circumstance or favors suspending a sentence and imposing probation. I.C. § 35–38–1–7.1. Phelps advanced his lack of criminal history as being a significant mitigating factor.

■■■■ In non-capital cases we examine both the written and oral sentencing statements to discern the findings of the trial court. *McElroy v. State,* 865 N.E.2d 584, 589 (Ind.2007). The trial court noted that Phelps had a lack of criminal history when making an oral sentencing statement; however, it did not do so until after initially omitting that fact from its summary of mitigating and aggravating factors, and only at the behest of Phelps. More importantly, the trial court did not state whether it would give the lack of

criminal history any weight as a mitigating factor, but simply stated in response to Phelps' declaration that the trial court had omitted the factor: "the [c]ourt notes that he has a lack of prior criminal history. Ok, is there anything further?" (Transcript p. 58). This, coupled with the fact that the trial court omitted Phelps' lack of criminal history from its written sentencing statement supports a conclusion that the trial court did not treat Phelps' lack of criminal history as a mitigating factor. Therefore, we conclude that the trial court abused its discretion by failing to consider Phelps' lack of criminal history as a mitigating factor.

### B. *Unsupported Aggravators*

Phelps contends that the trial court abused its discretion by finding aggravators that were unsupported by the record. In its written sentencing order, the trial court listed the aggravating factors as follows:

1. The Defendant was in a position of trust with the victims, and he violated said trust.

2. There was a high degree of care and planning on the part of the defendant to execute the offense. There w[e]re many opportunities for the Defendant to cease his actions, but he chose to continue.

3. Based on the psychological evaluation and the circumstances surrounding the offense, there is a high probability the defendant will commit another offense.

4. The defendant has exhibited limited remorse for his actions.

(Appellant's App. Vol. I, p. 115 (formatting altered)).

■■■ We first note that the State has conceded that Phelps was not in a position of trust when he committed the offenses,

citing our supreme court's decision in *Tyler v. State,* 903 N.E.2d 463, 469 (Ind. 2009). In *Tyler,* our supreme court concluded that the defendant had not been in a position of trust when babysitting for young children because "he was not regularly in a position of control over them ... the record [did] not suggest that he actively sought opportunities to supervise the children, and there [was] no evidence of his having sought to establish a prior position of trust or confidence." *Id.* at 469. We agree with the State that the considerations in *Tyler* similarly apply to the circumstances here.

■■■ The State also concedes that "the record does not support that there was a high degree of care and planning" by Phelps. (Appellee's Br. p. 9). It appears from the record that the trial court relied upon the facts that Phelps owned a hot tub and pool table to conclude that he exhibited a high degree of care and planning. However, Phelps stated that he had owned each of those items for years and that he purchased the hot tub to treat his shoulder problems and circulation problems stemming from his diabetes. Therefore, we conclude that the record does not support the trial court's determination of a high degree of care and planning.

■■■ The State however, argues that the latter half of that aggravator—that Phelps had opportunity to cease but chose not to—is a valid aggravating factor supported by the record. Choosing not to cease criminal conduct when having the opportunity to do so is not a statutorily enumerated aggravating factor. I.C. § 35–38–1–7.1. That being said, the aggravating factors listed in that statute are not exclusive and trial courts may consider additional aggravating factors when determining a sentence. *Johnson v. State,* 734 N.E.2d 242, 246 (Ind.Ct.App.2000). And we acknowledge that "[t]rial courts clearly

are allowed to consider various circumstances relating to the nature of the crime" when determining sentences. *Roney v. State,* 872 N.E.2d 192, 203 (Ind.Ct.App. 2007), *trans. denied.* However, a trial court may not use a factor constituting a material element of an offense as an aggravating circumstance. *Hape v. State,* 903 N.E.2d 977, 1002 (Ind.Ct.App.2009), *trans. denied.*

Following through with criminal conduct despite an opportunity to cease is intrinsically connected with the commission of the crime. The trial court did not note any considerations about the nature of Phelps' offenses which it thought deserved treatment as an aggravating factor. Therefore, we conclude that the trial court's application of his failing to cease despite the opportunity to do so as an aggravating factor is not supported by the record and is improper as a matter of law.

■■■ Phelps argues that because neither appointed expert concluded that he is a sexually violent predator, or that he is likely to reoffend, the trial court's third aggravating factor is not supported by the record. Reviewing the reports of Dr. Krause and Dr. Buckles, we fail to find where either opined that Phelps was likely to reoffend. Dr. Krause stated that Phelps had a below average "interest in and motivation for treatment." (Appellant's App. Vol. II, p. 170). Further, Dr. Krause found that Phelps' "responses suggest that he is satisfied with himself as he is, that he is not experiencing marked distress, and that, as a result, he sees little need for change in his behavior." (Appellant's App. Vol. II, p. 170). However, Dr. Krause did not interpret these findings as demonstrating that Phelps is likely to reoffend, and we conclude that the trial court abused its discretion by basing its determination that Phelps would commit another offense on the psychological evaluations.

■ Finally, Phelps argues that the trial court abused its discretion by concluding that he showed limited remorse. Phelps apologized repeatedly for his actions, stated that he now appreciated the seriousness of them, and promised that he would never do what he had done again. However, "[r]emorse, or lack thereof, by a defendant often is something better guarded by a trial judge who views and hears a defendant's apology and demeanor first hand and determines the defendant's credibility." *Gibson v. State*, 856 N.E.2d 142, 148 (Ind.Ct.App.2006). Therefore, we are unable to conclude that the trial court abused its discretion when determining that Phelps exhibited limited remorse for his actions.

■ In summary, we conclude that the trial court abused its discretion by failing to find Phelps' lack of criminal history to be a mitigating factor, and abused its discretion by finding as aggravating factors that Phelps violated a position of trust, exhibited a high degree of care and planning, failed to cease committing the crimes despite the opportunity to do so, and was likely to reoffend based on the psychology evaluation. Therefore, all but one of the aggravating factors applied by the trial court is invalid, that being Phelps' limited remorse. Our supreme court has held that a sentence may be upheld where a single aggravating factor supports it, so long as we can say with confidence that in the absence of the invalid aggravators the trial court would have imposed the same sentence. *Backer v. State*, 772 N.E.2d 799, 803 (Ind.2000). In light of the numerous abuses of discretion on the part of the trial court, we cannot say with confidence that it would have imposed the same sentence absent those mistakes.

Phelps asks for us to remand his case for a new pre-sentence investigation report and a new judge to conduct a sentencing hearing and re-sentence him. However, we choose to exercise our authority to revise Phelps' sentence.

■ Regardless of whether the trial court has sentenced the defendant within its discretion, we have the authority to independently review the appropriateness of a sentence authorized by statute through Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind.Ct.App. 2008). That rule permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer*, 868 N.E.2d at 491. "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind.2008).

■ As for the nature of Phelps' offense, he engaged in extremely inappropriate behavior with influential adolescent boys. However, there is no evidence in the record that he forced any of the boys to do anything against their will, nor is there any evidence that Phelps' crime stemmed from a pattern of recurring conduct. His offenses stem from a series of bad decisions occurring on one particular evening. As for Phelps' character, he has no prior convictions for any crimes, and prior to becoming disabled, Phelps had contributed to society with a productive work life. Furthermore, the mental health experts that evaluated Phelps came to the same conclusion that he is not a sexually violent predator, and one specifically stated that there is no evidence that Phelps is a pedophile. Therefore, we conclude that Phelps' sentence is inappropriate when the nature of his offenses and character are considered. We revise Phelps' sentence as follows: one and one-half years for Count 5; four years for Count 6; and one and one-half years for Count 13, all to be

served *concurrently* in the Department of Correction. We remand for the trial court enter a sentencing order and abstract of judgment reflecting these sentences.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's determination that Phelps is a sexually violent predator is not supported by sufficient evidence; Phelps waived his claim of error caused by the State's cross-examination of his statement at sentencing, and the trial court abused its discretion when sentencing Phelps. Additionally, we conclude that Phelps' sentence is inappropriate when considering the nature of his offenses and his character, and we revise his sentence so that he serves an aggregate sentence of four years in the Department of Correction.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and FRIEDLANDER, J., concur.