

**FILED**

Jul 27 2023, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurtis G. Fouts
Delphi, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Walden,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 27, 2023<br><br>Court of Appeals Case No.<br>22A-CR-2363<br><br>Appeal from the Clinton Circuit<br>Court<br><br>The Honorable Laura Zeman,<br>Senior Judge<br><br>Trial Court Cause No.<br>12C01-2008-F1-662 |

**Opinion by Judge Riley.**
Judge Weissmann concurs and Judge Bradford concurs in part and dissents in part with separate opinion.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jason Walden (Walden), appeals his convictions and sentences for three counts of child molesting, Level 1 felonies, Ind. Code § 35-42-4-3(a)(1); and two counts of child molesting, Level 4 felonies, I.C. § 35-42-4-3(b).

We affirm in part, reverse in part, and remand for resentencing.

## ISSUES

Walden presents this court with two issues, which we restate as:

(1) Whether the trial court abused its discretion when it replayed the victim's entire testimony in response to a jury question; and

(2) Whether the trial court abused its discretion by considering improper aggravating circumstances at sentencing.

## FACTS AND PROCEDURAL HISTORY

M.S. was born in September 2010. In the spring and summer of 2020 when M.S. was nine years old, her parents were renovating a house in Mulberry, Indiana, while the family continued to live at their home in Lafayette, Indiana. M.S. always accompanied her parents when they went to Mulberry to work on the house. When M.S.'s father needed help with some of the heavy lifting involved in the renovation, he called on Walden, who came to Mulberry on approximately ten occasions between April and July 2020. Walden was one of the family's closest friends, he had been best man at the wedding of M.S.'s

parents, and he accompanied the family on their yearly summer vacation. M.S. had known Walden her entire life.

[5] When M.S., her parents, and Walden were together in Mulberry to work on the house, M.S. would largely be allowed to structure her own time while the adults worked. "Usually every time he came over[,]" Mulberry would take M.S. to either the upstairs of the Mulberry home or to a detached garage and molest her. (Transcript Vol. II, p. 133). Walden placed his mouth on M.S.'s vagina, he placed his penis on M.S.'s mouth, and he placed his fingers in M.S.'s vagina. In addition, Walden placed M.S.'s hand on his penis to masturbate him, and he rubbed his penis on the outside of M.S.'s vagina. Walden threatened M.S. with harm if she told anyone about his offenses. However, on July 29, 2020, M.S. told her mother that Walden had been touching her inappropriately, and together they told M.S.'s father. The next day, M.S.'s parents alerted law enforcement of M.S.'s report, and on August 3, 2020, M.S. was forensically interviewed at the Hartford House where she reported that Walden had sexually molested her. M.S. was medically examined, but the molestation had left no physical traces of the offenses. In addition, M.S.'s clothing had been washed since the last time Walden had been present in Mulberry, so, pursuant to testing protocols, investigators did not collect her clothing for examination for bodily fluids.

[6] On August 6, 2020, the State filed an Information, charging Walden with three counts of Level 1 felony child molesting for performing or submitting to other sexual conduct with M.S. and with two counts of Level 4 felony child molesting

for performing or submitting to fondling with M.S. On August 1, 2022, the trial court convened Walden's jury trial. Also on August 1, 2022, the State filed a notice of its intention to admit evidence pursuant to Indiana Evidence Rule 404(b) that Walden had been charged with child molesting in two prior cases, and, in its notice, the State provided the cause numbers of the two prior cases. However, the State did not attempt to have that evidence admitted at trial.

[7] At trial, M.S. testified to facts consistent with the above referenced acts of molestation. On direct examination, the deputy prosecutor asked M.S. if Walden had ever put his fingers into her "crotch", and M.S. responded, "A little bit. Sometimes." (Tr. Vol. II, p. 131). M.S.'s parents, her grandmother, two members of law enforcement who worked on the case, and the forensic interviewer also testified for the State. Walden testified and denied all the allegations against him.

[8] During deliberations, the jury asked whether M.S. had answered "yes" or "a little bit" when she was asked, "[W]ere you penetrated by [Walden's] fingers[?]" (Appellant's App. Vol. III, p. 2; Tr. Vol. III, p. 74). In response to this jury question, the trial court proposed to determine if there was a disagreement or an inability to remember the testimony among the jurors, and, if so, the trial court further proposed to allow the jurors to decide whether they wished to hear M.S.'s entire testimony, including cross-examination, or whether they preferred to proceed without rehearing the testimony. Walden's defense counsel objected that the appropriate procedure would be to instruct the jury "to consult their collective memory as to the testimony." (Tr. Vol. III, p.

74). The trial court overruled that objection, had the jury brought into the courtroom, and explained its two proposed options for resolving the jury's question. The jury retired, and the trial court went off the record. When the trial court went back on the record, it observed that the jury was not present and that they were preparing to replay M.S.'s testimony. Walden's defense counsel raised a second unsuccessful objection, this time arguing that replaying M.S.'s testimony served "to unduly accentuate her testimony over the other witnesses in this trial." (Tr. Vol. III, p. 76). The entirety of M.S.'s testimony was then replayed for the jury. After continued deliberations, the jury found Walden guilty as charged on all counts.

[9] On August 24, 2022, Walden's presentence investigation report (PSI) was filed. Walden's PSI indicated that he had a 2001 Class A misdemeanor battery conviction. In addition, Walden's PSI provided that in 2016 Walden had been arrested in Marion County on three counts of Level 1 felony child molesting and two counts of Level 4 felony fondling and that he had been acquitted of all of those charges following a jury trial. As part of the preparation of Walden's PSI, the presentence investigator applied the Indiana Risk Assessment System (IRAS) to data about Walden's criminal history, education, employment and finances, family and social support, and other factors. The results of the IRAS tool placed Walden in the low-risk category to reoffend.

[10] On September 6, 2022, the trial court held Walden's sentencing hearing. When asked if there were any additions or corrections to be made to the PSI, Walden's counsel responded that Walden's acquittal on the 2016 child

molesting charges was properly listed in the PSI but that it would be improper for the court to consider those charges as an indicator of prior criminal activity. When the trial court asked the State whether it had any corrections or additions to the PSI, the deputy prosecutor informed the trial court that Walden had been previously charged and acquitted after trial on a second set of child molesting charges in Marion County in addition to the 2016 case that went to trial and resulted in acquittal. Walden's defense counsel then interjected that "as an [o]fficer of the [c]ourt, I must say I was his attorney for both trials. Indeed, he was acquitted two times in Marion County" in either 1999 or 2000. (Tr. Vol. III, p. 82).

[11] M.S.'s mother's victim's impact statement was read into the record. M.S. had told her mother that she had gone through a gender identity crisis, as "she wanted to be a male to stop things 'like this' from happening again in the future." (Tr. Vol. III, p. 85). M.S.'s mother considered the offenses to be "the ultimate betrayal," especially in light of the fact that Walden knew that she herself had been molested as a child. (Tr. Vol. III, p. 86). M.S.'s father testified that Walden, whom he considered to be one of his closest friends, had never told him that he had been charged, tried, and acquitted of child molesting in Marion County. When Walden's counsel objected, the trial court clarified that it would consider Walden's prior acquittals not as part of his criminal history but only as relevant to his risk of re-offense. M.S.'s father further testified that during family therapy he had learned that M.S. felt that he had "wanted her dead and gone" due to all the consequences of her reporting the offenses and

the disruption it caused to their lives. (Tr. Vol. III, p. 89). M.S. made an in-person victim impact statement. M.S. told the trial court that Walden had started abusing her when she was six-and-a-half or seven years old and that "I felt like I needed to be a male because my body and myself felt as if, if I was a male, then this wouldn't happen to me anymore." (Tr. Vol. III, p. 90). M.S. reported having experienced depression, anxiety, and cutting herself to take away her sadness.

[12] In its oral sentencing statement, the trial court expressed amazement that Walden had been twice acquitted of child molesting but that, shortly after his second acquittal, had begun molesting M.S. The trial court commented that, having read Walden's PSI and learned about his 2016 acquittal, the court had "looked it up[.]" (Tr. Vol. III, p. 104). The court stated that in doing so, it had learned that the 2016 case had involved

> a little girl who's about the same age as M.S. She had a troubled mother. So much that the children were taken out of the home and placed in foster care at one point. And this troubled little girl, sadly had to go to a mental health facility because she tried to commit suicide.

> And then even during the course of that investigation, you admitted to the detective there in Marion County that there was another child that had falsely accused you. So I never thought that other child had ever gone to trial. But wow. Again, the odds are – if I had taken a survey of the entire filled Ross-Ade Stadium last week and asked them, how many of you have ever been falsely accused, not once, not twice, but three times by three independent little girls. [] I would submit to you not one hand would raise. Not one.

(Tr. Vol. III, pp. 104-05).  The trial court also noted that when it compared the instant matter and the 2016 child molesting case, "I just see way too many similarities."  (Tr. Vol. III, p. 108).

[13]     The trial court found the following aggravating circumstances:

- The harm, injury, loss, or damage suffered by M.S. was greater than necessary to prove the offenses, in that M.S. was still having difficulties dealing with her trauma, including resort to self-harm, and was still in counseling and because M.S.'s family had also been harmed by Walden's offenses;
- M.S. was six years old when Walden began molesting her and that the molestation was on-going until M.S. was nine years old, which it found to be a "tender age";
- Walden was in a position of care, custody, or control over M.S. being a "very trusted" family friend who had been the best man at M.S.'s father's wedding;
- Walden had threatened to harm M.S. if she reported the offenses;
- Walden had a criminal history of one misdemeanor battery in 2001 which the court would weigh accordingly.

(Appellant's App. Vol. II, p. 179; Tr. Vol. III, pp. 106, 108).  As a non-statutory aggravating factor, the trial court found the following:

> [Walden] is "low" risk to re-offend without appropriate court intervention pursuant to the IRAS assessment.  However, the [c]ourt considers [Walden] to be "high" risk to re-offend based on his character and that this is the third time he has been charged with similar offenses.

(Appellant's App. Vol. II, p. 181).  The trial court found Walden's strong family support and his work history to be mitigating factors.  The trial court concluded

that the aggravating circumstances outweighed the mitigating circumstances and sentenced Walden to thirty years for each of his three Level 1 felony child molesting convictions and to six years for both of his Level 4 felony child molesting convictions, all to be served consecutively, for an aggregate sentence of 102 years.

[14] Walden now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Replay of M.S.'s Testimony*

[15] Walden argues that his convictions must be overturned because the trial court replayed M.S.'s entire testimony in response to the jury's question. Walden relies on Indiana Code section 34-36-1-6 which provides as follows:

> If, after the jury retires for deliberation:
>
> > (1) there is a disagreement among the jurors as to any part of the testimony; or
> >
> > (2) the jury desires to be informed as to any point of law arising in the case;
> >
> > the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Requesting that we interpret the statute and focusing on the wording that "the information required shall be given," Walden argues that the trial court acted in contravention of the statute because it was mandated to only replay the small portion of M.S.'s testimony "required" to answer the jury's question, not her

entire testimony. We cannot credit this argument for two reasons, the first of which is that Walden did not raise it in the trial court. Walden only objected that the trial court should replay none of M.S.'s testimony and that replaying her testimony inappropriately accentuated it over other witness's testimony. Walden did not cite Indiana Code section 34-36-1-6, let alone make any argument based on the text of the statute. Arguments presented for the first time on appeal are waived. *Ramirez v. State*, 174 N.E.3d 181, 198 (Ind. 2021) (finding defendant's claim of instructional error based on Indiana Code section 34-36-1-6 raised for the first time on appeal to be waived). Walden does not contend that the trial court's actions constituted fundamental error. In addition, Indiana Code section 34-36-1-6 only applies where the jury explicitly indicates to the trial court that there is a disagreement about the evidence. *Bouye v. State*, 699 N.E.2d 620, 627-28 (Ind. 1998) (rejecting a line of precedent holding that the statute is triggered whenever the jury asks to rehear testimony because the request itself is an inherent expression of disagreement or confusion). Here, the jury's note to the trial court about M.S.'s testimony did not explicitly state that the jurors had a disagreement over M.S.'s testimony, and there is no indication in the record that the trial court decided to replay M.S.'s testimony based on a disagreement. Because the statute did not apply, Walden's argument based on the statute's text is irrelevant.

[16] However, when Indiana Code section 34-36-1-6 and its mandatory provisions are not triggered, a trial court may exercise its discretion to replay witness testimony in response to a jury question. *See Pettrie v. State*, 713 N.E.2d 910,

913 (Ind. Ct. App. 1999) (holding that where the statute does not apply, "the decision to replay testimony is within the sound discretion of the trial court"). Walden argues that even if the statute was inapplicable, the trial court did not act within its discretion by playing M.S.'s entire testimony because "there could be no dispute-resolving purpose to the additional replayed testimony, and it[s] only impact was potentially prejudicial." (Appellant's Br. p. 10). However, this court has held that, even where the mandatory provisions of Indiana Code section 34-36-1-6 do apply, the trial court does not err in replaying the victim's entire testimony in response to questions about specific facts in the record. In *Martinez v. State*, 192 N.E.3d 1021, 1022 (Ind. Ct. App. 2022), *trans. denied*, Martinez, who was convicted of two counts of Level 1 and two counts of Level 4 child molesting, contended on appeal that the trial court had erred in replaying his victim's entire testimony in response to the jury's questions about the date of one of the alleged fondling incidents and about the frequency of the alleged offenses during a certain time span. Martinez argued that replaying the testimony in its entirety doubled its weight in the minds of the jurors. *Id*. 1023. This court rejected that argument, concluding that Martinez pointed to nothing in the record in support of his contention. *Id*.

[17] We reach a similar conclusion here and conclude that the trial court acted within its discretion when it replayed M.S.'s entire testimony. Contrary to Walden's assertion that the replaying of M.S.'s testimony had no viable role at trial, we observe that the jury's question did not match the precise wording used by the deputy prosecutor in questioning M.S. about possible digital penetration

of her vagina by Walden, and the trial court could have concluded within its discretion that it was best to replay the entire testimony, rather than guess what portion of M.S.'s testimony the jury was referencing in its question. In addition, the effect of replaying M.S.'s testimony in its entirety was that the jury's area of inquiry was positioned among the larger body of M.S.'s testimony, including Walden's cross-examination, diffusing emphasis on any particular aspect of her testimony.

[18] We do not agree with Walden that, unlike the defendant in *Martinez*, he has pointed to circumstances in the record to support his assertion that the replaying of M.S.'s testimony doubled its effect on the jury. Walden argues that the replay was certainly unduly prejudicial to him, as M.S.'s testimony was the only evidence of his guilt at trial. However, we do not find this argument to be persuasive, as the only evidence mentioned in *Martinez* supporting his guilt was the victim's testimony and the victim's SANE nurse whose short testimony only repeated the victim's report that Martinez had been molesting her since 2015. Neither do we find that the replay must have had the effect Walden proposes because the deputy prosecutor conditioned the jury during voir dire with a "drumbeat" of questions to believe M.S.'s testimony and be willing to convict him based on M.S.'s testimony alone. (Appellant's Br. p. 12). Our review of the parties' voir dire, including the extended passage cited by Walden on appeal, revealed that the deputy prosecutor principally asked questions meant to expose potential jury bias against or for child witnesses and to introduce the concept that the jury could convict a defendant based solely on

the testimony of a child witness, if the jury believed the child witness. Walden has not presented us with any authority indicating these are improper lines of inquiry. At no time did the deputy prosecutor tie these questions to the facts of the instant case. In addition, the deputy prosecutor directly posed the majority of these questions to the first of four venire panels, with the members of the subsequent panels being asked to speak up if they heard something they had a comment on. Therefore, the venire members were not exposed to unnecessary repetition of these questions. We also observe that the jury that was sworn in and heard the evidence against Walden received preliminary and final instructions that "[t]he quantity of evidence . . . need not control your determination of the truth." (Appellant's App. Vol. II, pp. 100, 127). The jury was presumed to have followed the trial court's instructions. *Weisheit v. State*, 109 N.E.3d 978, 989 (Ind. 2018). Therefore, even if the jury somehow perceived the replay of M.S.'s testimony as doubling the evidence against him, we will not presume that it controlled their determination of his guilt. Accordingly, we do not disturb the jury's verdicts.

II. *Sentencing*

A. *Standard of Review*

Walden next argues that the trial court considered improper aggravating circumstances upon sentencing him. We acknowledge that where a party claims that a trial court considered improper aggravating circumstances, we review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial

court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

[20] Walden challenges four of the six aggravating circumstances found by the trial court. We observe that Walden received advisory sentences; therefore, our determination that one or more of the challenged aggravating circumstances was improper will not result in our conclusion that the trial court erred in imposing its individual sentences.[1] Therefore, we will examine the propriety of each of the challenged aggravating circumstances in the context of determining whether the trial court's imposition of consecutive sentences was an abuse of its discretion.

*A. Harm Greater Than Necessary to Prove the Offense*

[21] The trial court found in support of this factor that M.S. was still experiencing difficulties dealing with the trauma Walden's offenses caused her, M.S.'s involvement in counseling was on-going, she had inflicted harm upon herself as

---

[1] Walden does not contend that the trial court was would have imposed any less than advisory sentences for his individual convictions.

a result of the offenses, and that M.S.'s family had also been harmed. Relying on *Thompson v. State*, 793 N.E.2d 1046, 1053 (Ind. Ct. App. 2003), wherein this court held in reviewing an ineffective assistance of counsel claim that in order for psychological trauma to the victim to be a valid aggravator, there must be evidence that "the impact, harm, or trauma is greater than that usually associated with the crime," Walden contends the trial court abused its discretion because these are effects usually associated with the offenses and which were contemplated by the legislature when it enacted the applicable criminal penalties.

[22]     We agree with Walden that in order for this factor to be a valid aggravator, the trial court must explain why the impact suffered by the victims exceeded that which is normally associated with the crime. *Hildebrandt v. State*, 770 N.E.2d 355, 359 (Ind. Ct. App. 2002) (finding this aggravator to be inappropriate in imposing consecutive sentences where the trial court failed to explain why the harm suffered by the victim was in excess of that associated with the offense), *trans. denied*. However, we disagree with Walden that the trial court failed to make such an explanation here. In its oral sentencing statement, the trial court noted that M.S. had cut herself as a result of her trauma and had questioned her gender identity as a way of coping with the psychological harm Walden had inflicted on her. Walden has not presented us with any authority indicating that either of these harms is normally associated with the offense of child molesting, and we have been unable to locate any. The trial court also noted in its oral sentencing statement that Walden had occupied an incredibly close

relationship with this family, in that he was treated like a "revered uncle" or a "godfather" and that his actions were especially betraying to M.S.'s mother, who he knew had been molested herself. (Tr. Vol. III, p. 104). The trial court also noted the sentencing testimony of M.S.'s father, which included his account of learning through family therapy that M.S. thought that he was angry with her for reporting Walden to the extent that he wanted her dead because of the "drama" she had caused to the family. (Tr. Vol. III, p. 89). These are particularized aspects of this case that were relied upon by the trial court in support of this aggravating factor and which are in excess of the harms usually associated with the offense of child molesting.

B. *Age of the Victim*

[23] The trial court found M.S.'s age at the time of the offenses to be aggravating, in that she was less than twelve years old, "i.e. age 6 at the time the abuse started and continued (on-going abuse) until age of 9", an age which the trial court found to be "tender." (Appellant's App. Vol. II, p. 180; Tr. Vol. III, pp. 106, 108). Walden claims that this was improper because M.S.'s age was an element of the offense. However, while it is improper for a trial court to rely solely on a victim's age where the age of the victim is a material element of the offense, a trial court "may properly consider the particularized circumstances of the material elements of the crime." *Kien v. State*, 782 N.E.2d 398, 414 (Ind. Ct. App. 2003) (concluding that trial court's use of the victim's age was not improper in sentencing for three counts of child molesting, where the trial court had found that the five-year-old victim was extremely vulnerable to molestation because of her "tender years"), *trans. denied*; *see also Stewart v. State*, 531 N.E.2d

1146, 1150 (Ind. 1988) (concluding that victim's age was a valid aggravator where trial court noted he was of "tender age" because that is a finding of a particularized individual circumstance of the offense). Here, the trial court made such a finding of a particularized circumstance when it found M.S.'s age to be "tender", and, thus, we find no error. (Tr. Vol. III, pp. 106, 108).

C. *Walden's Position of Care, Custody, or Control*

[24] Relying solely on *Phelps v. State*, 914 N.E.2d 283 (Ind. Ct. App. 2009), Walden asserts that this was also an improper aggravating circumstance. Phelps was convicted of two counts of vicarious sexual gratification and one count of dissemination of matter harmful to a minor after he assented to the request of the son of one of his friends to come to his house with two other boys to shoot pool, a get together that turned into the group watching pornography and masturbating. *Id*. at 287. In concluding that the trial court had relied upon an aggravating circumstance that was unsupported by the record when it found that Phelps had violated a position of trust to commit the offenses, this court observed that there was no evidence that Phelps had regularly been in a position of control over the children, that he had sought out opportunities to supervise them, or that he had sought to establish a prior position of trust and confidence. *Id*. at 291-92. In addition, the State had conceded that the "position of trust" aggravator was improper.

[25] Here, the State makes no similar concession. In addition, the concerns set out in *Phelps* are not implicated here, as there was evidence at trial to support the trial court's finding that Walden was in a position of care, custody, and control

over M.S. during the time of the offenses. Walden had a long-standing, close relationship with M.S. and her parents which M.S.'s parents testified at trial meant that they did not think twice about allowing Walden to be alone with M.S. M.S.'s mother testified that while she and M.S.'s father were busy working at the house, Walden and M.S. "would hang out all the time . . . It would happen every visit. They would go do different things. [We] would be working, and we just thought, you know, he was occupying her time, like a good friend does." (Tr. Vol. II, pp. 201-02). There was no evidence suggesting that M.S.'s parents asked Walden to do these things. In addition, M.S.'s grandmother found Walden and M.S. alone together on at least three occasions, and on an occasion recounted by M.S. at trial, during a family gathering and without being asked, Walden went inside to be with M.S. alone, ostensibly to show her how to search for something on the internet, but instead using the opportunity to molest her. This evidence supports the trial court's conclusion that Walden was in an ongoing position of trust and confidence with this family and that, during the charged period, he regularly sought out opportunities to supervise M.S. while her parents were working. Therefore, we do not find *Phelps* to be persuasive, and, as this is the only argument offered by Walden, we find no abuse of the trial court's discretion on this factor.

*D. IRAS*

[26] Walden makes three claims regarding the trial court's use of his IRAS score, two of which we do not find to be persuasive. Walden first claims that the trial court improperly used his IRAS score as an aggravating factor, something that

our supreme court has already rejected. *See J.S. v. State*, 928 N.E.2d 576, 578 (Ind. 2010) (holding that an offender risk assessment score cannot, in and of themselves, be considered as mitigating or aggravating circumstances). However, Walden mischaracterizes the trial court's use of his IRAS score, as the trial court clearly rejected Walden's IRAS score in its oral and written findings and did not use it as an aggravating factor. We also decline to credit Walden's contentions that the trial court improperly "looked [] up" the records of his 2016 child molesting case and that "[i]t appears from the sentencing dialogue" that the trial court discovered his 2000 child molesting case "while conducting outside investigation regarding the 2016 case." (Appellant's Br. p. 21, Tr. Vol. III, p. 104). Both these prior child molesting cases were referenced by cause number in the State's August 1, 2022, Notice of Intent regarding the use of Rule 404(b) evidence, so they were of record in this case before sentencing. In addition, pursuant to Indiana Evidence Rule 201(b)(5), (c), and (d), a trial court may, sua sponte, take judicial notice of the records of the courts of this state at any stage of the proceedings and without notice to the parties, so there was nothing improper about the trial court looking up the records of Walden's two prior child molesting cases.

[27] However, we agree with Walden that the trial court put information about Walden's two prior child molesting cases to improper use. In *McNew v. State,* 391 N.E.2d 607, 609, 612 (Ind. 1979), the trial court took into account defendant's prior acquittal in an unrelated armed robbery charge in enhancing McNew's sentence following his conviction for two counts of robbery. In

concluding that the trial court abused its discretion in considering the prior acquittal as part of McNew's history of criminal activity, the *McNew* court observed that

> a judge does not err in considering prior arrests which had not been reduced to conviction in determining what sentence to impose. But he did not properly consider the armed robbery charge which resulted in acquittal. A not guilty judgment is more than a presumption of innocence; it is a finding of innocence. *And the courts of this state*, including this Court, *must give exonerative effect to a not guilty verdict* if anyone is to respect and honor the judgments coming out of our criminal justice system.

Id. at 612 (emphasis added).

[28] Here, our review of the trial court's oral and written sentencing statements make it clear to us that the trial court considered Walden's two prior acquittals as part of a pattern of like behavior that culminated in his instant convictions. It is equally clear that the trial court's consideration of Walden's charges in two prior child molesting cases that resulted in acquittals as bearing on his likelihood of re-offense could only be relevant if the trial court failed to give exonerative effect to those acquittals. Therefore, we conclude that the trial court's findings regarding Walden's risk of re-offense are improper as a matter of law. *See id*.

[29] Walden does not dispute that the trial court properly found that his threat of harm to M.S. if she told and his 2001 conviction for misdemeanor battery were proper aggravators, and we have concluded that all the other aggravators, apart

from the trial court's assessment of Walden's risk of re-offense, were proper. The Indiana courts have long held that the finding of one valid aggravating circumstance may justify the imposition of consecutive sentences. *Gregory v. State*, 604 N.E.2d 1240, 1241 (Ind. Ct. App. 1992) (citing *Concepcion v. State*, 567 N.E.2d 784, 790 (Ind. 1991)), *trans. denied*. However, we may remand for resentencing upon concluding that the trial court considered an improper aggravating circumstance if we are not convinced that the trial court would have imposed the same sentence had it not considered the improper aggravator. *See McDonald v. State*, 179 N.E.3d 463, 464 (Ind. 2022) (remanding for resentencing where the court was "not so sure" that the trial court would have imposed the same sentence absent the sentencing error); *see also Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990) (holding that if a reviewing court "cannot say with confidence that the permissible aggravators would have led to the same result, it should remand for resentencing by the trial court"). Given the prominence of Walden's prior acquittals in the trial court's oral and written sentencing statements, we are not convinced that it would have ordered Walden to serve all his individual sentences consecutively if it had not considered this factor. Therefore, we remand for resentencing.

## CONCLUSION

[30] Based on the foregoing, we conclude that the trial court did not abuse its discretion when it replayed M.S.'s testimony in response to the jury's question but that its consideration of Walden's prior acquittals was improper.

Affirmed in part, reversed in part, and remanded for resentencing consistent with this opinion.

Weissmann, J. concurs.

Bradford, J. concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Jason Walden,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

Court of Appeals Case No.
22A-CR-2363

**Bradford, Judge, concurring in part and dissenting in part.**

I agree with the majority that the trial court did not abuse its discretion when it replayed the victim's testimony in response to a jury question. I also agree with the majority that that the trial court did abuse its discretion in considering Walden's two prior acquittals for child molesting cases as bearing on the likelihood that he would reoffend. However, I part with the majority's ultimate conclusion as I am unconvinced that remand for resentencing is necessary.

As the majority notes, the finding of one valid aggravating circumstance may justify the imposition of consecutive sentences. *Gregory v. State*, 604 N.E.2d 1240, 1241 (Ind. Ct. App. 1992), *trans. denied*. Remand is only necessary if the court is not convinced that the trial court would have imposed the same sentence had it not considered the improper aggravator. *See McDonald v. State*, 179 N.E.3d 463, 464 (Ind. 2022) (remanding for resentencing where the court

was "not so sure" that the trial court would have imposed the same sentence absent the sentencing error).

[3] In sentencing Walden, the trial court found the following five proper aggravating circumstances:

- The harm, injury, loss, or damage suffered by M.S. was greater than necessary to prove the offenses, in that M.S. was still having difficulties dealing with her trauma, including resorting to self-harm, and was still in counseling and because M.S.'s family had also been harmed by Walden's offenses;
- M.S. was six years old when Walden began molesting her and that the molestation was on-going until M.S. was nine years old, which it found to be a "very tender age;"
- Walden was in a position of care, custody, or control over M.S. being a "very trusted" family friend who had been the best man at M.S.'s father's wedding;
- Walden had threatened to harm M.S. if she reported the offenses; and
- Walden had a criminal history of one misdemeanor battery in 2001 which the court would weigh accordingly.

Tr. Vol. III p. 106; Appellant's App. Vol. II p. 179. Based on the numerous proper aggravating factors that the trial court considered in imposing consecutive sentences, I am confident that the trial court would have imposed the same sentence, even without consideration of the improper aggravating factor. *See McCain v. State*, 148 N.E.3d 977, 984 (Ind. 2020) (providing that, when an improper aggravator is used, appellate courts remand for resentencing *only* if the court cannot say with confidence that the trial court would have imposed the same sentence if it had only considered proper aggravating and mitigating

circumstances). As such, I conclude that the trial court's sentencing error was harmless and would therefore vote to affirm.